AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Rose/gold Apple iPhone 12 Pro Max cellular phone, DPS seizure # CU-2022-0330.E2, and its SIM | )<br>)<br>)  Case No.  **23-mj-03237-KSC**<br>)<br>)<br>) |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2 and A-2a, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent John E. Costello, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*John E Costello*
Applicant's signature

John E. Costello, Border Patrol Agent, US Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 9/5/2023

*[Judge's signature]*
Judge's signature

City and state: San Diego, California    HON. KAREN S. CRAWFORD, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Rose/gold Apple iPhone 12 Pro Max cellular phone, Texas Department of Public Safety seizure number CU-2022-0330.E2
**(Target Device 2)**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT A-2a

PROPERTY TO BE SEARCHED

The following property is to be searched:

AT&T SIM Card, Texas Department of Public Safety seizure number CU-2022-0330.E2A

AT&T SIM Card is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B-2

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 and its SIM card described in Attachment A-2a includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **July 17, 2020, through July 1, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, John E. Costello, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

   1) White Apple iPhone 13 cellular phone, Texas Department of Public Safety (DPS) seizure number CU-2022-0330.E1
       a. Cricket SIM card, DPS seizure number CU-2022-0330.E1A, removed from Device 1 by DPS.
   2) Rose gold Apple iPhone 12 Pro Max cellular phone, DPS seizure number CU-2022-0330.E2
       a. AT&T SIM card, DPS seizure number CU-2022-0330.E2A, removed from Device 2 by DPS

   Hereinafter referred to as the **Target Devices** as further described in Attachments A-1 and A-2, and to seize as evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachments B-1 & B-2. The requested warrants are related to the investigation of Felipe De Jesus ROSALES-Herrera for alien smuggling and bringing in aliens for financial gain. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

2. The information contained in this affidavit is based upon my training and experience, personal observations, and information obtained from other agents and members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

1

## TRAINING AND EXPERIENCE

3.  I have been employed as a United States Border Patrol ("USBP") agent ("BPA") since April 2006. I am currently assigned to the San Diego Sector Intelligence Unit ("SDC SIU"). I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the United States Code (Controlled Substance Act (CSA) violations) and Title 19 of the United States Code (customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations. Prior to my position as Border Patrol Agent – Intelligence, I was assigned as a task force officer to the San Diego Border Enforcement and Security Task Force (BEST) with Homeland Security Investigations (HSI). I was also assigned to the Campo Border Patrol Station where I worked in uniformed and plain clothes assignments.

4.  As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

5.  Through investigations, training, law enforcement intelligence sources, and conversations with senior agents and task force officers/agents, I have become familiar with the operations of both large and small alien and/or drug smuggling organizations (ASOs/DTOs) operating within the United States and internationally.

6. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including recruitment methods, transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

7. Through my training and experience, I have gained a working knowledge of and insights into the workings of criminal organizations. I have also gained extensive information as to the operation habits of persons who make their living as alien and narcotics smugglers. I have become familiar with the behavior, speech, routes and method of operation utilized by criminal organizations to avoid detection and apprehension by law enforcement officers.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media,

or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

  a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

  c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

  d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I) exist. There is also probable cause to search the information described in Attachments A-1, A-1a, A-2, and A-2a for evidence of these crimes, as described in Attachments B-1 and B-2.

## FACTS SUPPORTING PROBABLE CAUSE

12. On June 30th, 2022, the Texas Department of Public Safety (DPS) conducted a traffic stop on a black GMC Yukon XL being driven by Felipe De Jesus ROSALES-Herrera in Pecos, Texas. The stop resulted in the discovery of four undocumented aliens in the back of the truck to including a juvenile male. ROSALES was charged by Texas authorities with smuggling of persons, smuggling of persons under 18 years of age, and fraudulent use or possession of credit debit card information.

13. During a search of the truck ROSALES was driving, Officers seized two cellular phones, the **Target Devices**, from ROSALES. The rose gold iPhone was seized from ROSALES' person at the time of his arrest. The White iPhone was taken from the GMC Yukon during a post arrest search of the vehicle. Both phones were presented to ROSALES for access codes and consent to search to which ROSALES declined to give the codes and consent. The phones were seized pending warrants. The Cricket SIM card, evidence number CU-2022-0330.E1A, and the AT&T SIM card, evidence number CU-2022-0330.E1A, were removed by DPS from their respective cellular phones, the **Target Devices**, and secured on the back of the phones themselves. The SIM cards are referenced in attachments A-1a and A-2a.

14. The charges against ROSALES are pending in the Texas state court system. On August 22nd, 2023, Border Patrol Agent-BPA J. Costello took custody of the **Target Devices** to file search warrants to obtain the evidence described in Attachments B-1 and B-2.

15. Felipe De Jesus ROSALES-Herrera has been identified as an undocumented alien that coordinates the smuggling of other undocumented aliens and is the head of his own criminal organization using the Southern District of San Diego, California as his primary smuggling corridor. He has been indicted in case 23-CR-871-CAB for conspiracy to transport aliens.

16. ROSALES was first connected to a smuggling attempt on August 17, 2020, in Campo, California. The driver was apprehended attempting to smuggle two undocumented aliens. During a custodial interview, the driver stated he was recruited by a subject using the moniker "Primo". The driver then showed interviewing agents a text string in the texting application WhatsApp between himself and "Primo" using the personal telephone number (PTN) 7144925296 (hereinafter referred to as PTN 5296). Through WhatsApp, the driver stated "Primo" gave him all his instructions and coordinated his smuggling event.

17. On August 25, 2020, Ohio State Highway Patrol (OHP) officers and agents with the Sandusky Border Patrol (SBP) encountered ROSALES when the vehicle he was in was pulled over on a main highway in Ohio. OHP officers requested assistance from the SBP for a vehicle search. SBP agents conducted an inspection of the four occupants and discovered two of the subjects had criminal histories for alien smuggling and a third passenger, ROSALES, was discovered to be an undocumented alien who was ordered removed and had that order reinstated four times from subsequent illegal entries. A field interview of ROSALES revealed him to be living in Anaheim, California and that he had his own trucking company called "Rosales Jr. Trucking". Because of the COVID restrictions instituted at the time of contact, all for subjects were released at the scene.

Given the prior history of alien smuggling for two of the occupants and the known history of ROSALES' criminal exploits, I believe this encounter to have been either the group scouting northern border smuggling routes or them dropping off aliens already smuggled into the United States to their financial sponsors.

18.  Over the course of the investigation into ROSALES' criminal activities, agents have known him to use two primary monikers; Primo and Junior (Jr.) and four different cellular numbers to conduct his criminal enterprise.

19.  On December 25th, 2021, Kevin Antonio QUEVEDO-Moncada, a driver smuggling undocumented aliens, failed to yield to agents attempting a traffic stop. The driver lost control of the vehicle and crashed resulting in the death of one undocumented alien and serious injuries to two others. The phones seized from the driver and undocumented aliens were searched and revealed Jose Luis ALEJO-Cruz (also charged in 23-CR-871-CAB) to have been one of the coordinators for this event. Also discovered in the phones were two numbers associated ROSALES, PTN 5296 and 9514981449 (hereinafter referred to as PTN 1449). PTN 5296 was discovered in phones of material witness/smuggled alien Luis Javier HERNANDEZ-Sacramento (later discovered to be a foot guide) and QUEVEDO. Material witness/smuggled alien Luis Javier HERNANDEZ-Sacramento had PTNs 1449 and 5296 saved in his phone; material witness/smuggled alien Jose Gael GARCIA-Sanchez had PTN 1449 in his phone.

20.  On April 15, 2022, a driver was arrested while attempting to smuggle undocumented aliens in the Brown Field Border Patrol AOR. A subsequent search of the vehicle he was driving revealed a loaded Springfield .40 caliber pistol secreted into the side pocket of the driver's side door. During a post Miranda statement, the driver stated he was going to pick up four undocumented aliens. He admitted to being successful smuggling undocumented aliens on one prior occasion for which he was paid $1000.00. The driver gave written consent to a search of his cellular phone.

21. A subsequent search of the driver's phone revealed he was recruited by ALEJO and coordinated and guided by ROSALES through the texting application WhatsApp. Agents discovered a chat group involving the driver, ALEJO and ROSALES (using PTN 5296 and assigned the contact name of "Junior.") Upon discovering this chat group agents again interviewed the driver. The driver positively identified ROSALES in a photo lineup as the subject that took custody of the undocumented aliens for which he was paid $1,000.00. According to the messages, ROSALES coordinated the driver's smuggling events and directed him to the payment location using PTN 5296.

22. On May 8, 2022, another driver was arrested in the Brown Field AOR attempting to smuggle three undocumented aliens. During a custodial interview of the driver and a consensual search of his cellular phone agents discovered WhatsApp texts strings showing that he was recruited and had his smuggling event coordinated by ALEJO-Cruz. The driver also had PTN 5296 as a contact in his list with the contact name "Junior".

23. Over the course of the investigation, agents have discovered approximately 16 smuggling events where PTN 5296 was discovered or cited as the coordinator or one of the coordinators and approximately 10 where PTN 3739 was used. ROSALES has also been previously identified as the subject using PTN 5296 as well as using PTN 5296 to coordinate meeting the drivers under his employ to pay them and take custody of the undocumented aliens he helped smuggle into the United States.

24. Furthermore, a Google search of PTN 5296 revealed it to be the primary business number for a trucking company called RJR Trucking. RJR is an acronym for ROSALES Jr. (Junior). In December of 2022, investigating agents served a search warrant on the Instagram account associated to ROSALES named "junior_rh8". In January 2023, agents received the data from Meta Inc. (parent company of Instagram). A search of this data revealed pictures of ROSALES driving various trucks with the RJR Trucking logo on the doors as well as having the cellular number PTN 5296 as the verification cellular

number on the account. Other pictures showed a subject with hand tattoos matching those of ROSALES driving the trucks.

25. An administrative subpoena request sent to AT&T revealed PTN 5296 to be subscribed to by a subject named Monserrath AGUILAR in Anaheim, California. AGUILAR is ROSALES' girlfriend/wife.

26. PTN 1449 has also been discovered in the phone of admitted or identified foot guides. Foot guides are subjects employed by the smuggling organizations for the purpose of guiding the undocumented aliens through the mountainous terrain to a pre-determined pick-up point in the United States. While analyzing the tolls and subscriber data associated to PTN 1449, agents learned the foot guides found in possession of this phone number appear to be part of a family alien smuggling ring recruited out of Coscomatepec, Veracruz, Mexico. ROSALES is from a town close to Coscometepec. Approximately 5 smuggling events have been discovered where PTN 1449 was found within the phones of identified foot guides having the contact names associated with it as "El Junior" and "Levanton". "Levanton" is Spanish slang for driver or pick up. "El Junior" is a known moniker used by ROSALES. An administrative subpoena request sent to T-Mobile revealed PTN 1449 to be subscribed to by Christapher JOVANI. JOVANI is believed to be a false name. This is a common tactic employed by smugglers and foot guides to disguise the actual user (s) of the cellular device in question.

27. The third number discovered to be utilized by ROSALES to conduct his criminal activities is 7252363739 (hereinafter referred to as PTN 3739). This cellular number has been discovered or cited in approximately 7 smuggling events. One such event took place on May 5th, 2022, when a subject was arrested in the Brown Field Border Patrol AOR attempting to smuggle two undocumented aliens. During a post Miranda statement, the driver consented to a search of her cellular phone. Discovered in the phone were conversations in the WhatsApp texting application between the driver, ALEJO (using a known moniker "El Matracas") and PTN 3739 (ROSALES, using the contact name "Jr").

Within the text messages agents could see PTN 3739 sending the driver a picture of the area where she was expected to stop. The picture is of Otay Lakes Road facing westbound with a mile marker circled in red with PTN 3739 (JR/ROSALES) stating, "Stop exactly here". An administrative subpoena request sent to AT&T/Cricket revealed the subscriber to be named Monserra AGUILAR. I believe this to be ROSALES' girlfriend/wife, Monserrath AGUILAR as the spelling is only two letters short of the full spelling of her name.

28. Two phones were seized from ROSALES when he was arrested for domestic violence in Riverside, California on November 7th, 2022. On January 31, 2023, investigating agents took custody of those phones and served search warrants on both phones. A search of the phone revealed the cellular number PTN 3739 to belong to one of the cellular phones seized from ROSALES from this arrest.

29. The final number known to be used by ROSALES is 6466596029 (hereinafter referred to as PTN 6029). On August 7th, 2022, John Douglas OGLESBY was arrested in the Brown Field Border Patrol's area of responsibility attempting to smuggle five undocumented aliens. OGLESBY is a known associate of both ROSALES and ALEJO. OGLESBY is charged along with them in case 23-CR-871-CAB. OGLESBY's phone was searched pursuant to a warrant. The phone contained numerous conversations about the conspiracy between OGLESBY, ALEJO and ROSALES (using PTN 3739) to smuggle undocumented aliens into the United States. OGLESBY's phone contact list also had the number PTN 6029 with the contact names of both "Jr" and "Primo".

30. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that ROSALES conducts most if not all his criminal activities through the use of cellular telephones. I also know that ROSALES has been associated to at least four cellular numbers and that those cellular numbers have been used to conduct crimes in violation of Title 8 United States Code 1324 (alien smuggling).

I believe that the **Target Devices** seized from ROSALES at the time of his arrest by the Riverside Sheriff's Department are two phones utilizing at least two of the cellular numbers documented earlier as being used by ROSALES to conduct his criminal enterprise. I also know that cellular telephones can use multiple numbers on one cellular device therefore it is possible that the **Target Devices** seized from ROSALES could utilize all four cited cellular numbers.

31. I know that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information is stored in the memory of the **Target Devices**. Considering the above facts and my experience and training, there is probable cause to believe that ROSALES used the **Target Devices** to communicate with others to further and expand his criminal activities. I know that ROSALES employs a crew of foot guides and to plan smuggling routes, times and pickups as well as communicate with the sponsors of the smuggled aliens he brings to the United States for payment. To do conduct these activities he requires cellular phones to coordinate these events. Because the **Target Devices** were seized at the time of ROSALES' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. It should also be noted that this is the first criminal event involving ROSALES where his cellular phones were seized as evidence. As such, I believe these cellular phones to have information contained within them associated ROSALES to criminal activity associated to 8 USC 1324 and crimes commonly associated with this charge as far back as his initial smuggling event on August 17th, 2020, in Campo, California, as documented earlier in this affidavit.

32. Accordingly, I request permission to search the **Target Devices and their respective SIM cards** for data beginning on **July 17, 2020, through July 1, 2022**.

## METHODOLOGY

33. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

34. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephones and SIM cards and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

35. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting

the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

36. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

### CONCLUSION

37. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

38. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1, A-1a, A-2, and A-2a and seize the items listed in Attachment B-1 & B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_John E. Costello_
John E. Costello
Border Patrol Agent-Intelligence

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this _5th_ day of September, 2023.

HON. KAREN S. CRAWFORD
United States Magistrate Judge

13